**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emilio E. Mendoza,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CIV 09-426-TUC-GEE<br><br>**ORDER** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §405(g). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) and FED.R.CIV.P. 73 having received the written consent of both parties.

The court finds the final decision of the Commissioner is supported by substantial evidence and is free from legal error.

PROCEDURAL HISTORY

On December 26, 2006, Mendoza constructively filed an application for disability insurance benefits. (Tr. 10, 106-08). He alleged disability beginning on May 2, 2005, due to right shoulder surgery, neck and spine injury, three neck surgeries, and arthritis. (Tr. 106, 132).

His claim was denied initially (Tr. 72-75) and upon reconsideration. (Tr. 79-81). Mendoza requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Peter J. Baum on June 11, 2008. (Tr. 10, 33, 82). In his decision, dated February 23, 2009, the ALJ found Mendoza was disabled for the closed period from May 2, 2005 to December 31, 2006, but had no continuing disability. (Tr. 10-23). Mendoza appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-4); *Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989).

Mendoza subsequently filed the instant complaint appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). He filed an opening brief on February 25, 2010. [doc. # 27] The Commissioner filed an answering brief on March 29, 2010. [doc. # 28] Mendoza filed a reply on April 14, 2010.

Claimant's Work History and Medical History

Mendoza was 54 years old at the time of the hearing. (Tr. 33, 39). He has a GED and previously worked as a welder and later as a senior correctional officer. (Tr. 33, 39, 133). On May 2, 2005, Mendoza suffered an automobile accident, which injured his neck and right shoulder. (Tr. 39, 132). He has not worked since that date. (Tr. 40).

On May 12, 2005, shortly after the accident, MRI imaging of Mendoza's neck revealed "moderate posterior disc bulge at C5-6 and C6-7" and "moderate to marked right foraminal spinal stenosis due to spondylosis and mild left foraminal spinal stenosis also due to spondylosis." (Tr. 316).

On July 26, 2005, MRI imaging of Mendoza's right shoulder revealed a "full thickness . . . tear of the anterior supraspinatus tendon," a "tear of the posterior supraspinatus/anterior infraspinatus tendon insertion" and a "[c]omplex SLAP [superior labrum anterior posterior] tear." (Tr. 314-15).

On August 18, 2005, John R. Klein, M.D., performed a right shoulder arthroscopy, arthroscopic slap repair, and arthroscopic acromioplasty." (Tr. 238-39).

On November 2, 2005, Ty Endean, D.O., performed a "[d]iagnostic and operative arthroscopy, right shoulder with arthroscopic subacromial decompression"; "[a]rthroscopic lysis of adhesions"; and "[m]anipulation under anesthesia." (Tr. 308-09).

On April 7, 2006, an MRI study of Mendoza's neck revealed "[d]egenerative disc disease, most notably at C4-5, and C5-6, with canal, and neural foraminal stenosis." (Tr. 284). On May 8, 2006, Charles W. Needham, M.D., performed an "[a]nterior cervical diskectomy at C5-6 with removal of osteophytes and also a C4-5 anterior cervical diskectomy with removal of osteophytes. . . ." (Tr. 261). The surgery was indicated due to "chronic intractable neck pain radiating in to both arms in radicular fashion with weakness of the hands, limited cervical movement and failure of conservative therapy." *Id*.

On December 8, 2006, x-ray studies showed "moderate disc space narrowing at C3-4, C4-5, and C5-6" and "marginal osteophyte formation." (Tr. 323). On December 28, 2006, Ty Endean, D.O., reviewed Mendoza's x-rays and recorded his impression as "[m]ultilevel degenerative disk disease of the cervical spine status post fusion." (Tr. 338). On January 9, 2007, Endean reviewed Mendoza's CT scan and gave his impression as "[h]erniated cervical disk" and "[c]ervical spinal stenosis." (Tr. 336).

In March of 2007, a non-examining state agency physician, Robert S. Hirsch, M.D., reviewed the medical records and completed a Physical Residual Functional Capacity Assessment form for the period from 5/05 to 5/06. (Tr. 359-66). He found Mendoza could lift 20 pounds occasionally and 10 pounds frequently. *Id.* He could stand and/or walk for a total of about 6 hours in an 8-hour workday. *Id.* He could sit for a total of about 6 hours in an 8-hour workday. *Id.* He should never climb "ladder/rope/scaffolds" and should only occasionally kneel, crouch, or crawl. *Id*.

Hirsch completed a second evaluation for the period from 5/07 onward. (Tr. 351-58). He found Mendoza could lift 20 pounds occasionally and 10 pounds frequently. *Id.* He could stand and/or walk for a total of about 6 hours in an 8-hour workday. *Id.* He could sit for a total of about 6 hours in an 8-hour workday. *Id.* He should only occasionally climb ramp/stairs/ladder/rope/scaffolds, kneel, crouch or crawl. *Id*.

1 | In May of 2007, Mendoza was examined by Jack H. Dunn, M.D. (Tr. 375-76).
Mendoza's chief complaint was continued neck pain radiating to his chest wall, shoulder, arm and hand. *Id.* From the previous diagnostic studies, Dunn identified a C4-5 bulge and a C5-6 bulge. Id. He also noted "some foraminal stenosis" and "osteophytic spurs on the right side at C4-5 and C5-6; C6-7 is not so bad." *Id.* In September of 2007, Dunn evaluated recent nerve conduction studies and concluded Mendoza had "mild acute brachial plexopathy." (Tr. 484).

In October of 2007, a non-examining state agency physician, John Fahlberg, M.D., reviewed the medical records and opined that Mendoza retained the ability to perform light work. (Tr. 488).

In June of 2008,Ty Endean, D.O., wrote a summary of Mendoza's medical history and physical limitations. (Tr. 504). He noted that Mendoza has "pain in the cervical area with difficulty moving his neck," a condition exacerbated "when the weather changes." *Id*. "He has limitation of motion and weakness of the right shoulder and difficulty lifting his arm overhead." *Id*. Endean "recommended that he should not do any overhead activity, should avoid repetitive lifting and should try not to lift from the floor using his right arm." *Id*. "Lifting weights with . . . the right arm were limited to under ten pounds infrequently and for short distance and he should avoid climbing ladders or crawling." *Id*. "He could sit but he would have to be careful about keeping his neck in a bent position as it could aggravate his pain." *Id*. "He would have difficulty reaching with his right hand." *Id*. Endean noted that "[a]s of April 14, 2008, Mr. Mendoza asked to be released to full duty and try it without restrictions[,] and I agreed to let him try it." *Id.*

Also in June of 2008, Mendoza appeared with counsel at a hearing before ALJ Peter J. Baum. (Tr. 41). He reported he was involved in a traffic accident on May 2, 2005. (Tr. 39). He has not worked at all since the accident, but he has been applying for jobs in the security field. (Tr. 40). He explained he could not get a position if he had workplace limitations, so he asked his doctor, Endean, to release him for work without restrictions. (Tr. 47).

Mendoza reported he has problems bending his neck down or up. (Tr. 50). His doctors told him not to lift his right hand above his head. (Tr. 51). He takes oxycodone and Demerol

for pain. (Tr. 53). At home, he helps his wife with washing the dishes and making the bed. (Tr. 53).

At the hearing, the vocational expert, Vanbleet, testified that a person with the RFC determined by the state agency non-examining medical expert, Hirsch, could perform the job of dispatcher. (Tr. 62). If the person has limited neck mobility and needs to keep his head from bending too far down or up, the number of dispatcher positions might be decreased but not by very much. (Tr. 63). According to Vanbleet, a person could still perform the job of dispatcher as the job is practiced in Arizona even if that person could not lift more that "five to seven pounds." (Tr. 66).

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,*

8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[1] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

"The burden of proof is on the claimant as to steps one to four." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "As to step five, the burden shifts to the Commissioner." *Id*.

The ALJ's Findings

At step one of the disability analysis, the ALJ found Mendoza "has not engaged in substantial gainful activity since May 2, 2005, the alleged onset date . . . ." (Tr. 14). At step two, he found Mendoza has "the following severe combination of impairments: status-post motor vehicle accident, status-post labral tear of the right shoulder and surgical repair of same, and cervical degenerative disc disease status-post two-level cervical discectomy . . . ." (Tr. 14). The ALJ continued the disability analysis for the closed period from May 2, 2005 through December 31, 2006, and concluded Mendoza was disabled at this time. (Tr. 17-18). He then conducted a disability analysis for the period from January 1, 2007 forward. (Tr. 18). At step three, the ALJ found Mendoza's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 19). The ALJ then analyzed Mendoza's residual functional capacity (RFC). (Tr. 19). He found Mendoza has "the residual functional capacity to perform a limited range of light work

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

activity. . . ." (Tr. 19). He could "lift or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in eight-hour day, and sit for six hours in an eight-hour day." (Tr. 19). "[H]e could occasionally kneel, crouch, or crawl; frequently climb ramps or stairs but never ladders, ropes, or scaffolds; and frequently balance or stoop." (Tr. 19). "[H]e had limitations with regard to reaching with the right/dominant arm." (Tr. 19). "He could reach above-shoulder level with the right arm no more than one-third of the day." (Tr. 19). At step four, the ALJ found Mendoza could not perform his past relevant work. (Tr. 21). At step five, the ALJ found, based on the testimony of the vocational expert, that Mendoza could work as a dispatcher, a semi-skilled sedentary occupation. (Tr. 21-22).

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*.

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider

the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

## DISCUSSION

In this case, the ALJ concluded that Mendoza was disabled for the closed period from May 2, 2005 through December 31, 2006. He further concluded that Mendoza's condition improved as of January 1, 2007, and he was not disabled after this date. Mendoza challenges the ALJ's decision that he was not disabled after January 1, 2007.

The ALJ found that after January 1, 2007, Mendoza retained sufficient residual functional capacity to perform a limited range of light work. (Tr. 19). The ALJ made this finding based on the opinion of the non-examining state agency physician, Robert S. Hirsch, M.D., who concluded from the medical record that Mendoza's ability to work improved as of this date. (Tr. 19). Based on the testimony of the vocational expert, Ms. Vanbleet, the ALJ concluded that Mendoza could perform the job of dispatcher, a semi-skilled sedentary occupation. (Tr. 22). The court finds the ALJ's finding of non-disability is supported by substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (The opinion of a non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (The ALJ's reliance on the testimony of a vocational expert was proper where she was given a hypothetical that contained all the limitations the ALJ found credible and supported by substantial evidence in the record.).

As a preliminary matter, Mendoza argues the court should analyze this case using a "medical improvement standard" that places the burden on the government to prove he is no longer disabled as of January 1, 2007, citing *Waters v. Barnhart*, 276 F.3d 716 (5th Cir. 2002). It is instructive to examine the case is some detail.

The plaintiff in *Waters* sought disability insurance benefits due to a broken ankle and other injuries. *Waters*, 276 F.3d at 717. The Commissioner decided that Waters was disabled for a closed period immediately after his injury but thereafter was able to return to his past relevant work. *Id.* His ultimate finding of non-disability was made at the fourth step of the five step disability analysis. *Id.* at 718. At this step, the burden is ordinarily on the claimant to

prove he cannot perform his past relevant work. *Id*. The District Court affirmed the final decision of the Commissioner rejecting Waters' argument that the Commissioner applied the wrong legal standard. *Id*. The Fifth Circuit reversed holding that where the Commissioner awards a closed period of disability, the *Commissioner* assumes the burden of showing the claimant experienced a "medical improvement" and was able to work thereafter. *Id*. at 718-20.

The Ninth Circuit has not specifically adopted or rejected the "medical improvement" standard of review in cases where the Commissioner awards a closed period of disability. And, it does not appear that this issue needs to be resolved here.

In this case, unlike *Waters*, the Commissioner found Mendoza was able to work after a closed period of disability after analyzing his claim at step *five*. At this step of the analysis, the burden is on the Commissioner to prove that, while Mendoza cannot return to his past relevant work, he nevertheless retains the ability to perform substantial gainful work in the national economy in light of his age, education, and work experience. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner in this case already assumed the burden to prove Mendoza was not disabled after January 1, 2007. Accordingly, there is no need to adopt the Fifth Circuit's special burden-shifting rule.

On the merits, Mendoza argues the ALJ's opinion discounts the contrary opinion of the treating physician, Ty Endean, D.O. Endean recommended that Mendoza "should not do any overhead activity, should avoid repetitive lifting and should not [] lift from the floor using his right arm." (Tr. 506). He further opined that Mendoza should limit lifting with this right arm to ten pounds infrequently. *Id*. He believed Mendoza "could sit but he would have to be careful about keeping his neck in a bent position as it could aggravate his pain." *Id*.

Ordinarily, the opinion of a treating physician is entitled to deference, and before that opinion may be discounted, an ALJ must provide specific and legitimate reasons. Here, however, the treating physicians' opinion, while it is more restrictive than that of the non-examining physician, does not affect the ultimate finding that Mendoza can work as a dispatcher.

The vocational expert testified that a restriction concerning neck flexibility might decrease the number of available jobs somewhat, but the reduction would not be very large. (Tr. 63). She testified that dispatchers in Arizona are not required to lift more than seven pounds. (Tr. 66). She further testified that the inability to lift the dominant right arm above the shoulder would not affect the ability to work as a dispatcher. (Tr. 62). The court concludes the ALJ's alleged failure to accept the limitations discussed by Endean does not require reversal. Endean's limitations are not inconsistent with the ALJ's ultimate finding of non-disability. Accordingly, the ALJ's alleged failure to accord Endean's opinion sufficient deference is at most harmless error. *See Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) ("We have also affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

Mendoza further argues the ALJ's determination that his closed period of disability ended on December 31, 2006 is inconsistent with Endean's decision that he be released to full duty without restrictions on April 14, 2008. The court does not agree.

The ALJ did not find that Mendoza was able to work without restrictions on January 1, 2007. He simply found that Mendoza was not disabled as of this date. In fact, the ALJ acknowledged that Mendoza's ability to perform light work was restricted due to his injuries. The ALJ's decision that Mendoza could work with restrictions on January 1, 2007, is not in conflict with Endean's opinion that Mendoza could work without restrictions on April 14, 2008.

Finally, Mendoza argues the ALJ improperly discounted his subjective testimony. Mendoza's testimony, however, is not inconsistent with the findings of the ALJ.

At the hearing, Mendoza testified that he still experiences pain as a result of his motor vehicle accident. He has problems bending his head up or down. (Tr. 50). He also has problems lifting with his right arm. (Tr. 51). His neck and right shoulder pain make driving difficult. (Tr. 54).

In spite of his injuries, Mendoza is able to help his wife with light housework. (Tr. 53). Moreover, he reported that he has been looking for work in the security field. (Tr. 40). When asked if he could work full-time as a gate guard, Mendoza replied: "Sure. I could try." (Tr. 41).

Mendoza's testimony as a whole is consistent with the ALJ's finding that he could perform a limited range of light work. Accordingly, the court does not conclude the ALJ improperly discounted Mendoza's subjective testimony.

IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED. This Clerk of Court is instructed to enter judgment accordingly and close this case.

DATED this 6th day of May, 2010.

_____
Glenda E. Edmonds
United States Magistrate Judge